# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| KIMBERLI O'CONNELL, | * | |
| | * | |
| Plaintiff, | * | |
| v. | * | Civil Case No. SAG-18-2515 |
| | * | |
| PETER K. RAHN, | * | |
| | * | |
| Defendant. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Kimberli O'Connell ("Plaintiff") filed an Amended Complaint against Defendant Peter K. Rahn, in his official capacity as former Secretary of the Maryland Department of Transportation ("MDOT"). ECF 8. Because Rahn is sued in his official capacity, the Defendant will be referred to herein as "MDOT." Plaintiff asserts three Counts: Count One (hostile work environment and constructive discharge under Title VII); Count Two (hostile work environment and constructive discharge under Md. Code Ann., State Gov't, § 20-606 *et seq.* (West 2019) ("Title 20"); and Count Three (Retaliation). *Id.* Discovery is now concluded, and MDOT has filed a Motion for Summary Judgment, ECF 24, supported by a Memorandum of Law, ECF 24-1 (collectively, "the Motion"). I have reviewed the Motion, along with Plaintiff's Opposition, ECF 26, and MDOT's Reply, ECF 27. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the reasons that follow, MDOT's Motion for Summary Judgment will be granted.

## I.     FACTUAL BACKGROUND

The facts are viewed in the light most favorable to Plaintiff, the non-moving party. Plaintiff began working in MDOT's State Highway Administration District 7 office in October,

2016.  ECF 24-2 at 44:18-45:3 (Pl. Dep.).  In her capacity as a contract employee, with the title

of "office engineer," she processed and drafted responses to subcontractor requests for change

orders.[1]  *Id.* at 31:4-18, 40:13-41:16, 64:8-69:11.  Plaintiff was a successful employee who

maintained good working relationships with almost all of her supervisors and co-workers.  *Id.* at

104:3-7.  Martin Ratchford served as Plaintiff's direct supervisor, consistently expressed

satisfaction with her work performance, and ultimately became a personal friend.  *Id.* at 13:4-17;

101:4-102:20, 191:17-192:2, 249:2-21.  One of Plaintiff's co-workers, Laura Frymoyer, served

as the administrative assistant for the Assistant District Engineer for the construction division of

SHA District 7.  *Id.* at 74:2-12.  Among other duties, Frymoyer prepared time sheets and

invoices for the work performed at MDOT SHA District 7 by staffing firm consultants, such as

Plaintiff.  *Id.* at 131:6-132:1.  Frymoyer had periodic and "sporadic" absences from work, during

which her responsibilities were assigned to Plaintiff.  *Id.* at 88:14-90:18, 132:2-134:9.  Frymoyer

did not get along with her supervisors, who were men.  *Id.* at 90:19-95:9.  She expressed

frustration with what she described as poor communication and lack of teamwork in the office.

ECF 24-6.

On July 11, 2017, Frymoyer returned to work from an absence, and received a call from a

contractor, inquiring about the whereabouts of the timesheets for his company's staffing

employees.  ECF 24-8; ECF 24-9; ECF 24-2 at 141:19-143:14.  During the call, Frymoyer was

"impolite and short" with the caller, ultimately telling him that the timesheets "wouldn't be a

problem if the 'f-ing' idiots that were doing her job were doing it correctly."  ECF 24-8

(expletive altered).  When Ratchford walked into the office, Frymoyer told him what had

---

[1] Although Plaintiff worked pursuant to a staffing contract with a private staffing company, Inc.,
MDOT acknowledges its role as Plaintiff's "joint employer" pursuant to *Butler v. Drive
Automotive Industries of America, Inc.*, 793 F.3d 404, 414 (4th Cir. 2015).

happened "in a very hostile manner," and O'Connell "politely interrupted" to provide a more complete version of the events. *Id.* As Ratchford left the room, Frymoyer made a final statement to Ratchford "implying that the only reason [Plaintiff] was in [Ratchford's] office was because [Plaintiff] was constantly under his desk." *Id.*

Two days later, Plaintiff filed an internal "Complaint of Discrimination" describing the incident and alleging sexual harassment. ECF 24-9. The Complaint was referred to MDOT SHA's Employer-Employee Relations Division to consider disciplinary action. ECF 24-10, ¶¶ 4-5. Following an investigation, SHA issued Frymoyer a Written Counseling Memorandum, which stated that "[a]ny further incidents of this nature may result in disciplinary action, up to and including termination." ECF 24-11. In order to further "rectify the situation," Ratchford separated Plaintiff from Frymoyer within the office, and moved Plaintiff to a workstation that was fifteen to twenty feet away from the rest of the construction department. ECF 24-2 at 150:4-154:7. Plaintiff did not file a complaint about the move, and the move had no impact on Plaintiff's job requirements, or job performance. *Id.* at 152:9-16, 153:9-19.

More than three months later, on October 20, 2017, Plaintiff complained to another coworker, Neil Haines, that she was not receiving her mail timely. *Id.* at 188:15-189:12. Haines responded that he would take care of it. *Id.* Shortly thereafter, Frymoyer walked into Plaintiff's office and tossed a handful of opened letters "like a frisbee" into Plaintiff's inbox. *Id.* at 189:13-191:11, 181:3-185:1, 186:3-15. Plaintiff responded by filing a complaint with SHA's OEO office alleging "bullying," not discrimination based on gender. ECF 24-13. Plaintiff never again had a problem receiving her mail. ECF 24-2 at 191:12-16.

Plaintiff alleges that on other occasions, she and Frymoyer disagreed about her handling of work assignments during Frymoyer's absences. ECF 24-2 at 257:13-258:14. Plaintiff alleges

that Frymoyer attempted to "undermine and harass" Plaintiff by "sending additional information to be included in reports after Plaintiff had completed the reports and accusing Plaintiff of making mistakes in emails that were sent to many supervisory and management employees." ECF 8, ¶ 13; ECF 24-2 at 254:8-257:12.  Plaintiff did not make any written complaints about any of these other incidents.  ECF 24-2 at 259:21-260:16.  Plaintiff herself was never disciplined "in any way" as a result of these incidents.  *Id.* at 255:13-15.  Indeed, Plaintiff was never disciplined during her employment with MDOT for any reason.  *Id.* at 255:16-18.

Shortly after the mail-throwing incident, Plaintiff began looking for another job.  *Id.* at 220:17-21.  One of the jobs she applied for was the position of "training coordinator" at SHA District 7, even though the job would have kept her in the same office as Frymoyer and, potentially, placed Plaintiff in the same workspace she currently occupied in the HR department, which was only fifteen to twenty feet away from Frymoyer.  *Id.* at 217:4-219:18; *see id.* at 152:17-153:6.  On or about November 10, 2017, Plaintiff received a job offer to return to work in the private sector at an hourly rate exceeding her rate at MDOT by more than $2 per hour.  *Id.* at 120:8-10, 227:21-228:6.  Plaintiff accepted the job offer on November 16, 2017, and resigned from MDOT, effective December 1, 2017.  *Id.* at 11:10, 226:7-20.  In an email to a colleague, Plaintiff expressed her excitement to return to a big company in the private sector.  ECF 24-15.

On December 11, 2017, after Plaintiff left her employment with MDOT, she received a letter from MDOT's Title VII/Civil Rights Manager, summarizing MDOT's internal investigation of Plaintiff's complaint.  ECF 24-11.  The MDOT's internal investigation found "insufficient evidence to support a finding that discrimination occurred under TSHRS Policy, Section 11D and Title VII of the Civil Rights Act."  *Id.* at 1.  Plaintiff then filed a Charge of Harassment and Discrimination with the Equal Employment Opportunity Commission

("EEOC") on January 17, 2018.  ECF 8, ¶ 33.  The EEOC issued Plaintiff a Right to Sue Letter

on May 31, 2018.  *Id.* ¶ 34.  Plaintiff thereafter initiated this suit on August 16, 2018.  ECF 1.

## II.  LEGAL STANDARD FOR SUMMARY JUDGMENT

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is

appropriate only "if the movant shows that there is no genuine dispute as to any material fact and

the movant is entitled to judgment as a matter of law."  The moving party bears the burden of

showing that there is no genuine dispute of material facts.  *See Casey v. Geek Squad*, 823 F.

Supp. 2d 334, 348 (D. Md. 2011) (citing *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286

(4th Cir. 1987)).  If the moving party establishes that there is no evidence to support the non-

moving party's case, the burden then shifts to the non-moving party to proffer specific facts to

show a genuine issue exists for trial.  *Id.*  The non-moving party must provide enough admissible

evidence to "carry the burden of proof in [its] claim at trial."  *Id.* at 349 (quoting *Mitchell v. Data

Gen. Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993)).  The mere existence of a scintilla of

evidence in support of the non-moving party's position will be insufficient; there must be

evidence on which the jury could reasonably find in its favor.  *Id.* at 348 (citing *Anderson v.

Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986)).  Moreover, a genuine issue of material fact

cannot rest on "mere speculation, or building one inference upon another."  *Id.* at 349 (quoting

*Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999)).

Additionally, summary judgment shall be warranted if the non-moving party fails to

provide evidence that establishes an essential element of the case.  *Id.* at 352.  The non-moving

party "must produce competent evidence on each element of [its] claim."  *Id.* at 348-49 (quoting

*Miskin*, 107 F. Supp. 2d at 671).  If the non-moving party fails to do so, "there can be no genuine

issue as to any material fact," because the failure to prove an essential element of the case

"necessarily renders all other facts immaterial." *Id.* at 352 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Coleman v. United States*, 369 F. App'x 459, 461 (4th Cir. 2010) (unpublished)).  In ruling on a motion for summary judgment, a court must view all of the facts, including reasonable inferences to be drawn from them, "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

## III.   ANALYSIS

In her Amended Complaint, Plaintiff brings three separate claims under the Rehabilitation Act:  disability discrimination and retaliation, hostile work environment and retaliation, and constructive discharge.  ECF 8, ¶¶ 36-59.

### A.   Count One: Hostile Work Environment/Constructive Discharge

Plaintiff's Title VII claim contends that she was "subjected to a hostile work environment on the basis of her gender" and "forced to resign her position, resulting in her constructive discharge."  ECF 8, ¶¶ 39, 42.  Plaintiff's evidence does not establish a genuine issue of material fact as to either assertion.

First, to prove a hostile work environment, Plaintiff would have to show: (1) that she was subjected to unwelcome conduct, (2) that the conduct was based upon her sex, (3) that the conduct was sufficiently severe or pervasive to alter the conditions of employment and to create an abusive work environment, and (4) that the conduct is imputable to the employer.  *See Okoli v. City of Baltimore*, 648 F.3d 216, 220 (4th Cir. 2001).  The harassing conduct must be extreme, so as "to amount to a change in the terms and conditions of employment." *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 778 (1998)).

While Plaintiff establishes that Frymoyer subjected her to unwelcome conduct, she lacks evidence sufficient for a reasonable jury to conclude that Frymoyer's conduct was based on Plaintiff's sex. "Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at discrimination because of sex." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) (citation and alterations omitted).  Accordingly, to have a viable claim, Plaintiff must show that "but for" her sex, "she would not have been the victim of the alleged discrimination." *Causey v. Balog,* 162 F.3d 795, 801 (4th Cir. 1998).

Same-sex sexual harassment is actionable under Title VII, where a plaintiff can make an appropriate evidentiary showing.  *Oncale,* 523 U.S. at 79, 82.   In this type of circumstance, absent any proposal to engage in sexual activity and without any comparative evidence about Frymoyer's treatment of other men or women, Plaintiff would have to "show that she was 'harassed in such sex-specific and derogatory terms by another woman as to make it clear that the harasser [was] motivated by general hostility to the presence of women in the workplace.'"[2] *Lewis v. Balt. City Bd. of Sch. Comm'rs*, 187 F. Supp. 3d 588, 594 (D. Md. 2016) (quoting *Oncale*, 523 U.S. at 80).

Instead, here, Plaintiff alleges only the single comment by Frymoyer, in which she implied that Plaintiff and Ratchford were engaged in sexual conduct in the workplace.  ECF 24-8; ECF 24-9.   As courts have noted, the determinative factor is not whether the harassing comment included expressly sexual content, but whether the comment was motivated by Plaintiff's sex.  *See, e.g.*, *Lack v. Wal-Mart Stores, Inc.*, 240 F.3d 255, 261 (4th Cir. 2001) (holding that a male supervisor's remarks to another male employee that he thought the

---

[2] At MDOT SHA District 7, there were seventeen other women in the workplace, including three others in the construction division.  ECF 27-1, ¶ 5.  No other complaints were filed about Frymoyer's conduct.  *Id.* ¶ 6.

employee was "F-ing the cashiers," along with a reference to the "small bag between [the employee's] legs," while sex-*specific*, were not sex-*based* in the absence of evidence that the comments "were animated by his supervisor's hostility toward his employee as a man"); *Lewis,* 187 F. Supp. 3d at 595 ("[I]t is not enough that the challenged conduct be sex-specific." (citation omitted)); *English v. Pohanka of Chantilly, Inc.*, 190 F. Supp. 2d 833, 840 (E.D. Va. 2002) ("There is a significant distinction between harassment that is sexual in content (which is the allegation in this case) and harassment that is sexually motivated, and Title VII is only concerned with the latter.").   In this case, by definition, Frymoyer's comment impugned the integrity of both Plaintiff (a woman) and Ratchford (a man).   Indeed, in Plaintiff's own assessment, the comment in question was directed not at Plaintiff, but at Ratchford, further establishing that the harassing comment was not animated by hostility towards Plaintiff as a woman.   ECF 24-8 ("When Marty was walking away from her she made a comment towards him . . . ."); *see, e.g.*, *Davis v. Coastal Int'l Sec., Inc.*, 275 F.3d 1119, 1123 (finding that "Davis's own testimony conclusively shows that [his co-workers] were motivated by a workplace grudge" instead of his sex.).   Just as in *Lack*, here, Frymoyer's comment was sex-*specific* (vis-à-vis both Plaintiff and Ratchford), but Plaintiff has failed to produce any evidence to show that the comment was sex-*based* – that Frymoyer made the remark because of her animosity for Plaintiff's being a woman in the workplace.   *See* 240 F.3d at 261; *see also Lewis*, 187 F. Supp. 3d at 595.

Next, contrary to Plaintiff's assertions, Frymoyer's single sexually harassing comment could not establish the severe or pervasive conduct required for a hostile work environment. Other than that single incident, at best, Plaintiff's assertions amount to a personality conflict with Frymoyer. "[C]omplaints premised on nothing more than rude treatment by [coworkers], callous behavior by [one's] superiors, [or] a routine difference of opinion and personality conflict with

[one's] supervisor" do not suffice.  *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315-16 (4th Cir. 2008) (internal citations and quotations omitted).  Here, Frymoyer's treatment of Plaintiff was rude, callous, and unpleasant, but was neither severe nor pervasive.  *See Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (finding a workplace dispute and "some perhaps callous behavior by her superiors" insufficient for a plaintiff to establish severe or pervasive activity, even at the Rule 12(b)(6) stage); *Khoury v. Meserve*, 268 F. Supp. 2d 600, 614 (D. Md. 2003) (determining that "disrespectful, frustrating, critical, and unpleasant" workplace interactions do not create a hostile work environment).  Thus, even if MDOT found that Plaintiff "was subjected to inappropriate behavior," that Frymoyer was "a problem" or engaged in "bullying" or "offensive" conduct, those findings do not establish a hostile work environment motivated by Plaintiff's sex.[3]  *See, e.g.*, ECF 26-1 (notes from MDOT's EEO representative regarding investigation of Plaintiff's allegations).

Moreover, other than the single incident of sexual innuendo and the mail-throwing incident, which occurred more than three months apart, Plaintiff makes only general allegations of alleged mistreatment.  *See* ECF 8, ¶ 13 ("When Ms. Frymoyer was in the office, she often went behind Plaintiff's back or engaged in other behavior to undermine and harass Plaintiff, including sending additional information to be included in reports after Plaintiff had completed reports and accusing Plaintiff of making mistakes in emails that were sent to many supervisory

---

[3] Plaintiff relies heavily on the notes produced by MDOT in discovery, in which the writer (alleged to have been MDOT's EEO Program Manager, Juanita Cobb) recounted conclusions reached by an EEO investigator, Chris Rodriguez, and included the phrase "point of view of sexual harassment."  ECF 26-1 at 1.  It is not clear from the record what the somewhat cryptic notation meant.  However, even assuming that someone (whether Cobb, Rodriguez, or Plaintiff) had the point of view that Frymoyer's conduct amounted to sexual harassment, one individual's view would not determine whether the facts in the record meet the legal standards set forth above, especially considering that the notes were purportedly created on September 21, 2018 – one month *after* Plaintiff filed the instant action.

and management employees."); *id.* ¶ 14 ("Ms. Frymoyer often referred to Plaintiff as a "fucking idiot"); *id.* ¶ 28 ("Following the mediation, Mr. Frymoyer's behavior became even more hostile and aggressive while Defendant did nothing to assist Plaintiff.").   At her deposition, Plaintiff conceded that these instances of conduct happened on "a handful of occasions," and got better over certain periods.   ECF 24-2 at 254:8-261:7.   At other times, Plaintiff testified that Frymoyer's efforts to "undermine and harass" her occurred "[f]requently" or "on a weekly basis." *Id.* at 259:8-10.   Regardless, the Fourth Circuit has found that "general allegations" about a hostile work environment, devoid of "accounts of specific dates, times or circumstances," are insufficient to even plausibly allege hostile work environment claim. *Carter v. Ball*, 33 F.3d 450, 461–62 (4th Cir. 1994).

Finally, Plaintiff argues that, even if the Court does not find that the harassment was pervasive, a reasonable juror could conclude that the harassment was sufficiently severe to constitute a violation of Title VII. ECF 26 at 9-10.   Plaintiff attempts to liken her case to *Rohan v. Networks Presentation LLC*, 192 F. Supp. 2d 434, 437-38 (D. Md. 2002).   *Rohan* held, at the motion to dismiss stage, that an employee's being forced, by her employer, to divulge to thirty co-workers "that she is an 'incest survivor,' had been sexually abused by her father, suffers from mental impairments, and, as a result, takes medication and receives treatment from a mental health professional" constituted sufficiently severe discrimination to plead a Title VII claim.   *Id.* Here, however, one isolated incidence of a coworker accusing Plaintiff of engaging in a salacious act with her boss, coupled with the throwing of mail, are alone insufficient to meet that high bar. Thus, both with respect to the nature of Plaintiff's allegations and the level of specificity, Plaintiff has failed to produce facts sufficient to establish the necessary severe or pervasive hostile environment required to sustain her claim for a hostile work environment.

Plaintiff's claim of constructive discharge fares no better.  *See, e.g.*, *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 212 (4th Cir. 2019) ("Proof of constructive discharge requires 'a greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment.'" (citation omitted)). To prove constructive discharge, Plaintiff must prove that her "working conditions [became] so intolerable that a reasonable person in [her] position would have felt compelled to resign." *Green v. Brennan*, 578 U.S. ___, 136 S. Ct. 1769, 1776-77 (2016) (citation omitted).  "'Unless conditions are beyond 'ordinary' discrimination, a complaining employee is expected to remain on the job while seeking redress.'" *Evans v. Int'l Paper Co.*, 936 F.3d 183, 193 (4th Cir. 2019) (citation omitted); *see Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 187-88 (4th Cir. 2004) (finding that a plaintiff's resigning to escape a work environment he labeled "the most miserable and professionally unfulfilling of his life" could not establish a constructive discharge claim, because a reasonable person would not have found the "professional and . . . personal tensions" an intolerable working condition).  The Fourth Circuit has described the standard of "intolerability" as follows:

> Intolerability is not established by showing merely that a reasonable person, confronted with the same choices as the employee, would have viewed resignation as the wisest or best decision, or even that the employee subjectively felt compelled to resign.  Instead, intolerability is assessed by the subjective standard of whether a reasonable person in the employee's position would have felt compelled to resign, that is, whether he would have had no choice but to resign.

*Evans,* 936 F.3d at 193 (internal citations, quotations, and alterations omitted).

Under that standard, even viewing the facts in the light most favorable to Plaintiff, there is insufficient evidence of intolerable work conditions.  As noted above, Plaintiff cites only two specific incidents of harassing behavior, occurring more than three months apart.  Plaintiff's response to the second incident, involving the throwing of mail into her inbox, involved

applications for different jobs, including one that would have kept her in the District 7 office with Frymoyer. Moreover, Plaintiff stayed on the job with MDOT for more than five weeks after the mail-throwing incident, performing her duties to the best of her ability and to the satisfaction of her supervisors. ECF 24-2 at 249:8-21. That conduct is patently irreconcilable with the level of objective "intolerability" required to establish constructive discharge, and summary judgment is therefore warranted.

### B.    Count Two: Title 20 Claims

Plaintiff has not opposed MDOT's Motion for Summary Judgment on Count Two, which alleges that her Title 20 claim is barred by Eleventh Amendment immunity. "The ultimate guarantee of the Eleventh Amendment is that non-consenting States may not be sued by private individuals in federal court." *Bd. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001); *see Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 72-73 (2001). The Supreme Court requires "a clear declaration of the state's intention to submit its fiscal problems to other courts than those of its own creation" before a waiver of immunity from federal court jurisdiction is found. *Great N. Life Ins. Co. v. Read*, 322 U.S. 47, 54 (1944).

The Maryland legislature passed a law consenting to suit under Title 20, which provides, "The State, its officers, and its units may not raise sovereign immunity as a defense against an award in an employment discrimination case under this title." Md. Code Ann., State Gov't § 20-903. However, a separate venue provision specifies that a Title 20 action "shall be filed in the circuit court for the county where the alleged unlawful employment practice occurred." *Id.* § 20-1013(b).

Prior to June 11, 2019, courts in this District had issued a series of decisions opining that the Maryland legislature had consented to suit and waived Eleventh Amendment immunity for

Title 20 lawsuits filed in either state or federal court.  *See, e.g.*, *Royster v. Gahler*, 154 F. Supp. 3d 206, 216-17 (D. Md. 2015); *Davenport v. Maryland*, 38 F. Supp. 3d 679, 690-91 (D. Md. 2014); *Hartman v. Univ. of Md. at Balt.*, Civil No. ELH-10-2041, 2013 WL 6858854, at *3-5 (D. Md. Dec. 20, 2013).  However, on June 11, 2019, the Fourth Circuit decided *Pense v. Md. Dep't of Pub. Safety & Corr. Servs.*, 926 F.3d 97 (4th Cir. 2019).  In *Pense*, the Fourth Circuit ruled:

> Simply put, because the consent to suit provision does not "specify the State's intention to subject itself to suit in *federal court*," that provision cannot be read to waive the State's Eleventh Amendment immunity.  *See Atascadero*, 473 U.S. at 241, 105 S. Ct. 3142.  Moreover, neither the venue provision nor any other statute "expressly indicat[es] that the State['s] consent to suit extends to suit in federal court."  *See Feeney*, 495 U.S. at 307, 110 S. Ct. 1868.  Indeed, the Department relies on the venue provision — and its reference to solely "the circuit court for the county where the alleged unlawful employment practice occurred" — as evidence that the State's statutory waiver of sovereign immunity is unambiguously limited to suit in state court.  We, however, need only decide this: In the absence of the State's "express[] consent to suit *in federal court*," the Department is entitled to the protection of the Eleventh Amendment with respect to Pense's FEPA claims.  *See Allen*, 895 F.3d at 347.

*Id.* at 102.  Thus, under *Pense*, Plaintiff cannot recover for the state law claims she asserts in Count Two, and MDOT's Motion will be granted.

### C.    Count Three: Retaliation

In Count III, Plaintiff alleges that MDOT retaliated against her for her opposition to discriminatory practices.  To establish a prima facie case of retaliation, Plaintiff must establish "(1) that [she] engaged in a protected activity, (2) that the employer took a materially adverse action against [her] and (3) [that] there is a causal connection between the protected activity and the adverse action."  *Perkins,* 936 F.3d at 213.  Plaintiff fails to establish either of the first two elements.

The first element is that she engaged in protected activity – that is, Plaintiff must show that she either "made a charge, testified, assisted, or participated in" some Title VII proceeding,

or opposed a practice prohibited by Title VII.  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59 (2006) (quoting 42 U.S.C. § 2000e-3(a)).  In her Opposition, Plaintiff cites just one instance she alleges to constitute protected activity:  the complaints she filed after Frymoyer's comment to Ratchford.  ECF 26 at 13.  Although, in that complaint, Plaintiff checked the "sexual harassment" box on the form, her complaint does not allege sex-based animus toward her, and thus fails to allege protected sexual harassment, as elucidated above.

Even if Plaintiff were able to establish that she engaged in protected activity on either occasion, she has adduced no evidence to establish the second element, that MDOT subjected her to a materially adverse action.  Plaintiff must produce evidence sufficient for a reasonable jury to conclude that the action MDOT took would have "dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Perkins*, 936 F.3d at 213 (quoting *Burlington*, 548 U.S. at 68); *see also id.* at 213-14 (noting that "that the 'materiality' requirement [is] necessary to ensure that only significant harms [are] actionable").

Here, other than reiterating her claims for hostile work environment and constructive discharge, which were addressed above, Plaintiff's allegation in her Amended Complaint, essentially, is that the lack of sufficient response to Frymoyer's conduct constituted a materially adverse action towards Plaintiff.[4]  ECF 8, ¶¶ 56-57; *see also* ECF 26 at 13-14.  Even assuming that the evidence supported this allegation, Plaintiff cites no cases, and this Court is not aware of any, holding that a failure to take any adverse action against another employee can constitute a materially adverse action against the complainant.   Plaintiff's conditions of employment remained unchanged until her voluntary departure for her better-paying job in the private sector.  Indeed, as Plaintiff readily recognized, she was never disciplined by MDOT for *any* reason.  ECF

---

[4] In her Opposition, the only materially adverse action Plaintiff alleges is constructive discharge. ECF 26 at 13-14.

24-2 at 255:13-18.  On this record, no reasonable juror could conclude that MDOT retaliated against Plaintiff, even if she were said to have engaged in protected activity.  Accordingly, summary judgment in MDOT's favor is also appropriate as to Count III.

**IV.     CONCLUSION**

For the reasons set forth above, MDOT's Motion for Summary Judgment, ECF 24, will be GRANTED.


Dated:  April 21, 2020                                      _____/s/_____
                                                            Stephanie A. Gallagher
                                                            United States District Judge